18, 1904, Halco Foundry and Machine Co. v. GMS Mine Repair Mr. Lawrence. May it please the Court, on behalf of GMS, my name is James Lawrence. Your Honors, design patent protection does not provide monopoly rights in design concepts. Conceptual similarities between a patented device and an accused product are insufficient to provide a basis for infringement. This Court has a long line of precedent protecting against the overextension of design patents. This Court has recently, as its 2016 Sport Dimension decision instructed, the District Court must take into account claim construction to avoid these kinds of problems. One of the concerns I have about the argument you're making right now is that that's true. Our case law does say that, but I don't see where you've appealed the District Court's claim construction. Your Honor, we, GMS would maintain that the claim construction issue is embodied in the overall infringement analysis, which is on appeal here and is part of our first argument in our opening brief. In a utility patent context, we wouldn't understand somebody's raising of the factual dispute of infringement to include raising dispute in claim construction. Why should we do that with respect to design patents in your case? Well, Your Honor, in order to analyze whether or not the jury verdict here is supported by the record, the initial step that this Court would have to engage in is to appropriately construe the patent, which we maintain is subject to a de novo review as a matter of law to this Court's review. I understand what you're saying, but nobody complained, at least initially, about how the District Court construed the claim. Well, Your Honor, at Apex 159 to 164 in the record, GMS in the District Court raised the There was a Markman hearing in this case and a proposed construction of the design patent that took into account this Court's teaching in sport dimension. But where is it raised in the opening brief? I would point the Court to our discussion in Section 1 of GMS's argument, subsection C, pages 14 through 18, where the construction or an attempt is made to describe what the 684 patent covers and how that has to be considered in light of the very functional aspects that are at issue in the claim design here. So I understand you to be saying that here you've said that the claim has a very limited scope. I think that's the very language that you use on page 14 in your heading. So your position is that even though you didn't, as an issue, also dispute the District Court's claim construction, that you've said enough here in order to preserve this issue? Yes, Your Honor. Should I look anywhere else besides page 14 for that? You can look at page 14. You can also look later on to page 16 through 17, where there's a discussion of the functionality issues which inform the Court's construction of the, or GMS maintains should have informed the District Court's construction of this patent. As well as in the reply brief where we raised the issue, I believe it was on page 18 or page 17 in the reply brief, citing to the de novo standard to review for claim construction and suggesting that that can also be a basis for the Court to remand to provide a new trial on the issue of infringement, so under an appropriate claim construction that takes into account this Court's teachings in sport dimension and other cases. As I mentioned, Your Honor, claim construction consistent with the sport dimension decision and other cases provided by this Court were not, was not done in this case. At Apex 323, the District Court, after having in front of it a claim construction that took into account sport dimension, simply made a very brief order where it sent the claim construction eventually that got to the jury that simply incorporated the claim on the face of the patent and directed the jury's attention to the figures. And as a result, the jury in this case returned a verdict of infringement against GMS, a verdict that was based on similarities in concept and also similarities that were functional and prior art as well. I'd like to raise three points in support of GMS's position, Your Honors, that what is appropriate here is a finding of no infringement as a matter of law. First is that the scope of the 684 patent is narrow. Second is that when this patent is properly understood and construed, there are significant striking visual dissimilarities from every perspective. Third is that the products at issue in this case are not impulse purchases. These are expensive pieces of equipment that are purchased by employees in coal mines tasked with keeping coal miners safe. So they would exercise care and discretion in purchasing these products. With respect to the first point, and I don't want to belabor the point in the brief because we spend a significant amount of time in the opening brief talking about what is claimed here, and what is claimed here is quite a bit. In solid lines are essentially every feature of the device at issue, the squared lid that protrudes out the side of the standard 55-gallon drum, a frustroconical base with eight legs, a egg-shaped device to facilitate flow of air in and out of the device. HAFCO here chose, as the patentee, to claim each and every aspect of its device. So simply on the face of the patent alone, that choice suggests a limited scope in this case. Further, when the court takes into account consistent with sport dimension, which commands district courts to engage in a functionality analysis, the items that are claimed are highly functional. The 55-gallon drum, the lid, the stand, and we've cited, Your Honors, two particular portions in the concomitant utility patent, the 401 patent, and I would focus the court's attention on Apex 172, Column 2, to Apex 173, Column 3, where each and every element of the visual presentation is described and the functional aspects of those elements are detailed. The standard conventional drum being an economic, convenient choice for the structure of the stand, providing the ability, along with the drum, to roll this device in coal mines. The lid, preventing the admission of unwanted debris. All of it... The question is, a couple of things, but the first question is, the way this product looks, is it essential to perform the function of dust blowing? I mean, you need a container, of course, but does the container have to look like this particular container? Your Honor, conceivably, and I don't think GMS can do it otherwise at trial or in the briefs, conceivably there are alternative ways to design a rock dust blower. We would maintain that the optimal way would be to incorporate a cylindrical configuration because, as noted in our brief, the cylindrical container, as described in Apex 173, Column 3, provides for flow of the rock dust through the device without cavitation and other disruptions of the dust. And the other functional aspect is it allows for rolling. We would also point out that in sport dimension, functionality was taken into account and it was part of the claim construction analysis, even though, theoretically, there will be alternative ways to design the armbands that were at issue in that personal flotation case. So, we would maintain that it's still... The claim construction functionality is still an issue and it's an issue that wasn't addressed at the district court level. Once the claim construction was entered and the jury was instructed, they focused on, the jury, that is, focused on conceptual similarities and functional aspects of the design that ultimately led to the verdict. Did you present evidence on all these functionality arguments to the jury? The... And I would note we did not, my colleague, Mr. Biller and I, did not try the case. But our read of the record is that the functional considerations weren't presented to the jury. One issue there, Your Honor, was that HAFCO, I believe, worked very hard to prevent any aspects of the design. I think there were objections in the opening statement when trial counsel attempted to talk about what we talk about in the record, which is at Apex 590, Mr. Fornacci and the origins of this design, the vacuum cleaner that incorporated a 55-gallon drum. This design essentially reversed that. That opportunity was cut off. So you're saying that because of that colloquy at page A590, counsel thought that they couldn't talk about the functional aspects of the patent claim at all? Or present any evidence of what you're talking about today? Well, Your Honor, it's hard, I don't know what was in trial counsel's mind in that regard. But even so, the claim construction issue was in front of the court, again, at Apex 159-164. And the lessons of sport dimension, Ethicon and other cases, were there to be gleaned. And the district court didn't take the opportunity to reach out and provide a construction that would be consistent with this court's precedent. Are you telling us that there were requested jury instructions that were rejected? Your Honor, we do not maintain that. And in the briefing, and the opening brief and the reply brief, I believe, we don't contest, GMS doesn't contest, that jury instructions that accord with the view that we take in this case were actually in front of the jury.  What about turning to the prior art issue? Were jury instructions presented discussing the prior art aspect and the jury's need to consider prior art? They were not, Your Honor. And as we discussed in the briefing, we believe that's subject to a plain error, standard, or review. It's not something we maintain was preserved at the trial court level. Was there any attempt to introduce prior art to the jury and talk to them about the role of prior art? The prior art, Your Honor, GMS maintains was introduced on direct examination by HAFCO, actually, through its co-president and chief engineer, Mr. Fornaschi, who talks about at Apex 590 through 591, and importantly, the fact that the 55-gallon drum is a standard 55-gallon drum. But it wasn't... So the jury had that fact before it? It did have that fact before it. But it didn't have that fact before it in the context of this being prior art that the jury needed to understand in the context of understanding the claim? That's correct, Your Honor. It did not. With that, I'd like to reserve a balance of my time for rebuttal. All right. We'll save you some extra rebuttal, and let's hear from the other side. Thank you. May it please the Court. Counsel. Mr. Fresco. I'd like to address the last issue first, Your Honor. We strenuously disagree that the prior art was entered into the case in any manner. There was questioning of the officer and engineer of HAFCO about the design of the HAFCO product in which he admittedly said this is a standard-type drum to which were attached certain devices. I'm paraphrasing. But it was never stated that this 55-gallon drum was essential, that it was prior art. In fact, the patent reads on its face. If we look at the patent as construed by the Court, it's simply a cylindrical device to which the other mechanisms are attached. Now, the fact is prior art was not raised. The appellant here attempts to argue that the jury verdict must be set aside because the instructions were improper. The jury was properly instructed. It was not instructed in prior art because prior art was not in the case. The case law in this circuit and the federal circuit is clear that the burden of producing prior art is on the person challenging the patent. They did not produce a shred of evidence at trial, and I tried the case, as to the prior art. The only thing they can point to is that Mr. Fornaschi said this is a standard kind of drum. That isn't prior art. In fact, they mentioned in their brief that the patent itself claims or discloses the patent on a 55-gallon drum that was issued, I believe, in 2012. The jury had the patent, but they didn't know what those particular prior art references were. There was no effort to bring them in. There was no effort to present any evidence at all on behalf of GMS, let alone evidence by experts or anyone else, as to whether prior art was embodied in the HAFCO invention. They had the opportunity to seek claim construction. They asked for a Markman hearing, even though we know under Egyptian goddess and later precedent, if it's not frowned upon, at least it's discouraged in the case of a design patent. After a hearing, at which they presented no evidence on their proposed claim construction, Judge Fabert denied it. He said he was defining the patent as per the drawings in the patent itself, and that was his claim construction. At the same time, they moved for a declaration of invalidity, and he denied that also. The case went to trial. The case was tried to the jury. We presented evidence. We presented one of their witnesses adversely on the rest of our case. And after that, GMS moved for a directed verdict. The judge denied the directed verdict,  material, substantial evidence that would allow a jury to find for the plaintiff, and he was going to allow it to go to the jury. There was no motion for a summary judgment on the issue of functionality that's been discussed, the issue of invalidity. Instead, the case went to the jury on the instructions that were tendered and accepted by the court. There was no instruction referencing priority. Was there any prohibition on their accused infringer's ability to present evidence that the design was really largely functional? No prohibition, Your Honor. There was just no evidence presented. I frankly probably would have objected to it, but there was no evidence presented, and to my recollection, there was no ruling on that at all by the court. And candidly, in the arguments that were made at the markman stage and later in the briefing in this case, GMS ignores precedent and instead tries to argue component by component, element by element. This element compares to this one. All these elements look the same. Well, the fact is, it's a unitary design. The patent protects the unitary design, and they have to look at the design as a whole. The jury saw all the evidence, heard the credibility of the witnesses, reviewed that evidence, and within two hours came back and found infringement and willful infringement. Now, the issue is not whether they both have a stand and whether the two stands are the same. The issue is to an ordinary observer, and the law is clear, and I have the case here if we need to cite it, that a jury is comprised of ordinary observers, that the design of their product was disturbingly or similar to, substantially similar to, under the test, to our patent. And it would confuse an ordinary observer to the extent that the ordinary observer might purchase their product, thinking it was ours. Now, Judge Faber saw there was sufficient evidence to go to the jury, the jury reviewed the evidence, the jury found for the plaintiff, and what GMS now seeks to do is re-litigate the factual issues in this court. And this is not the place for it. We have, as was noted in a dissent in which Judge Newman participated in the, I believe it was the Arctic Cat case, no, it was the Phillips case, Phillips and AWH case, we have a rule that we must provide deference to factual findings by the trial judge. We can't lightly turn those aside because we may disagree in our view of what the facts may have shown. If the court has made these findings, seen the evidence, hearing the witnesses, we should be very reluctant to overturn the court at that point, particularly in this case where you've been through the Markman hearing, the Markman process, you've been through the directed verdict motion, you've been through the motion for a declaration of infringement, you've been to a jury, and the jury has found for the plaintiff and they found willfulness. To argue now that we should look instead to the fact that both of these machines had bases, both of these machines had lids, both of these cylinders had ribs. If they had a functional purpose, or a functional aspect, it doesn't matter. The case law is clear that you can have something that has a function but still be part of the overall design. The question is what did it look like, not what did it do. And in our case, we submit to you that the 55-gallon drum is not essential. In fact, there was testimony from the same witness, Mr. Fornacci, who said basically you need a cylinder. And Mr. Helbig, the GMS officer, we called adversely. And Mr. Helbig said they had even made one using a smaller container. You don't have to use a 55-gallon drum. The 55-gallon drum is claimed in the 401 utility patent. We didn't sue on the 401 utility patent. We sued instead on the design patent. Our claim is that their product as a whole looks like our product deceptively and meets the standard to allow us to claim infringement. The judge agreed, the jury agreed. If you have to answer any questions. Any questions for counsel? Any questions for counsel? I guess I do have one. What happened to the utility patent? Pardon me? How come you didn't allege utility patent infringement? We made a decision among counsel. We didn't prosecute the patent. We made a decision with the prosecutor of the patent that we should not proceed under the utility patent because it did in fact involve a 55-gallon drum. And the 55-gallon drum was by that time prior art. There was a patent on it by that point. So that decision was made that we had a better case for heckling on the utility patent. Anything else? Anything else? Thank you. Okay, Mr. Lawrence. Briefly, Your Honors. Functionality Excuse me. Functionality wasn't raised substantially at the trial because the claim construction that the court ultimately provided a claim construction, again, that had the utility patent as part of the overall consideration introduced at the Markman hearing also part of the briefing. Do you stand behind the claim construction that your client proposed at page 164? Your Honor, I I mean, in order to preserve claim construction, I suppose you need to stick to that position, right? I don't know if we would have to stick to the to the verbal descriptions provided at 164 Apex 164 GMS we would maintain that there was no consideration given at all to the functional aspects of the of the device that's at issue in this case. But you told us you didn't ask for consideration of the functional aspects. Well, Your Honor, we did at the Markman stage. Well, then, this would be your position that's preserved at the Markman stage, right? Page A164? That's correct, Your Honor. Is that addressed in your briefing on appeal? The particular construction that's proposed there is not. Finally, and again to address my colleague's point, even under Egyptian Goddess, 543 F3rd at 680, under that case, which was decided, I believe, in 2008, and subsequent decisions by this Court and sport dimension instruct it's not in clear equivocal terms in Egyptian Goddess, but sport dimension which quotes odds-on products from 1997 says the district court must engage in an identification of the non-functional elements of a design as part of the claim construction process where there are functional and non-functional aspects of a design claimed, and that simply did not happen here. Once the claim construction went in front of the jury, the jury found infringement on the basis of conceptual similarities. Doesn't Egyptian Goddess being an en banc case isn't that the case that we should follow? And to the extent it says that the district court may or should or could in many cases construe the claims to distinguish the functional from the non-functional, there's other ways that it could be done? It could. It doesn't. I believe the exact language in Egyptian Goddess, Your Honor, was, can take into account, however, the sport dimension case. The sport dimension can't overrule an en banc case, right? It's just a penal decision. That's correct. I would note, Your Honor, though, that at 680, 543 at 680, the Egyptian Goddess court actually quotes the exact same passage from odds-on products with respect to must, must perform, the district court must perform this analysis. I see I'm out of time. May I briefly conclude? All right. You get the last word. Sure. Your Honor, we ask that the court vacate the jury verdict and find no infringement as a matter of law in this case and any alternative, remand the case back to the district court for a claim construction that takes into account this court's decision in the sport dimension and others for a new trial on liability. Thank you. Thank you. Thank you both. The case is taken under submission and that concludes this morning's arguments. Thank you. All right.